In re RIVEROLL.

TAGGART v. MERCHANTS' NATIONAL TRUST & SAVINGS BANK.
No. 5932.

Circuit Court of Appeals, Ninth Circuit.
Feb. 17, 1930.

Chase, Barnes & Chase and Will J. Thayer, all of Los Angeles, Cal., for appellant.

Kemp, Partridge & Kemp and C. W. Partridge, all of Los Angeles, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order in bankruptcy approving a claim of the Merchants' National Trust & Savings Bank against the bankrupt's estate for the sum of $4,500. The basis of the claim as stated therein is as follows: Failure of the bankrupt to complete work of construction in accordance with contract, requiring claimant to employ others to do the work not done by the bankrupt and for which claimant has had to pay the sum of $4,500 more than the price for which the bankrupt agreed to do the same work. The trustee in bankruptcy objected to the allowance of the claim by the referee and later to the confirmation of referee's report approving the claim by the court, upon the ground that the claim had been released by the creditor for a valuable consideration. The primary question for consideration is the interpretation of release executed by the creditor's predecessor to the bankrupt.

It appears from the finding of the referee that the bankrupt had entered into a contract with the claimant's predecessor in which he offered to do certain street work consisting of grading, curbing, sidewalking, oiling, gravelling, and paving of the streets and alleys of a proposed subdivision numbered

6390 in accordance with the specifications of the city of Beverly, at an agreed price per cubic yard for grading, per lineal foot for curbing, per square foot for sidewalking, concrete paving, oiling, and gravelling. In pursuance of said contract the bankrupt entered upon the work, and completed the same, but the work was not accepted by the city of Beverly. The subdivision was being placed upon the market by a syndicate, and the contract with the bankrupt was made by the syndicate. After the bankrupt claims to have completed the work, it was claimed by the syndicate that there was collusion between a member of the syndicate charged with the supervision of the work and the bankrupt by which he had been overpaid and by which he had been enabled to furnish inferior materials, particularly, that the concrete was deficient in cement. Suit was brought upon this claim against the bankrupt and against the member of the syndicate who it was claimed conspired with the contractor. In that litigation an arbitrary agreement was reached, and, in pursuance of its findings, a stipulation was entered into wherein and whereby the bankrupt paid $47,000 to the syndicate as a settlement of the claims sued upon, and the release in question was given to him.

This release occupies five pages of the transcript, and need not be set out in full. It recited the pendency of the suit in question, the conspiracy to defraud the plaintiffs "by permitting the defendant E. Riveroll, as contractor for the improvement work in said Beverly Vista Tract, to do inferior and improper work and furnish insufficient and inferior materials and workmanship and that by carrying out said conspiracy, the said plaintiffs and other members of the syndicate had been overcharged for said improvement work and defrauded of a sum in excess of $80,000.00." It recited the agreement "to arbitrate all differences between them and particularly those matters alleged and referred to in said action No. 162,295. * * * " It recited that a complete check had been made of the improvements done under the contract and an estimate made of the amount which should be paid for the work done; that negotiations had been entered into "for the purpose of arriving at a complete settlement and adjustment of all claims of every kind which the said John A. Vaughan and John A. Evans, individually and as the governing committee of the said syndicate or which the syndicate or any of its members have or might have or claim to have against

any of the defendants in said action, for or on account of any payment of commissions or alleged payment of commissions to W. H. McCarty or Walter G. McCarty, or to any of the defendants, or for or on account of any alleged loss or damage or any loss or damage suffered by the syndicate or any of its members by reason of any conspiracy or alleged conspiracy or improper or inferior materials or improper or inferior workmanship arising out of any act or conduct or failure to act of any of the defendants."

The contract recites that Walter G. McCarty had received $47,700.65 which belonged to the syndicate, which had been paid thereto by Walter G. McCarty; that it was found that the bankrupt had been overpaid the sum of $44,407.30, which he thereupon repaid to the syndicate; it recites that the action has been dismissed, and "hereby acknowledge payment in full of any and all claims against any and all of the defendants in the said above mentioned action, and acknowledge payment in full and complete satisfaction of all claims or demands of every kind and character arising out of any of the matters or things set forth or alleged in said suit filed by the said John A. Vaughan and John A. Evans," and authorized and agreed to the dismissal of the suit, and "do hereby expressly agree that all claims or demands of any and every kind which the above mentioned or described syndicate or syndicates may have or claim to have, or any of the members thereof may have or claim to have against the said * * * E. Riveroll * * * have been fully and finally and completely adjusted, compromised and settled, and that by the execution and signing of this instrument, the said last mentioned parties and each of them are forever released and discharged from any claim or indebtedness or liability to said syndicate or syndicates, or any of the members thereof, and particularly on account of any payment or alleged payment of commissions or rebates or discounts, or any overpayment for work done in any of said units 1, 2 and 4 in said tract 6380."

In view of this release, the claimant bases its right to the allowance of its claim upon the theory that the right of action therein accrued after the settlement, and therefore was not covered by the general language of the release. In that connection it should be stated that the bankrupt ceased work in October, 1924, and thereafter contended that he had completed the work called for under the contract, and refused from that time forward

to do any further work. It appears that it is quite common for concrete pavement to crack some time after the work is done, and that in this case cracks began to develop shortly after the work was done, particularly along the line between the curb and the pavement. Such cracks existed at the time of the settlement and release above mentioned. After the settlement, an effort was made to have the city authorities of the city of Beverly Hills accept the work as completed in accordance with the rules and regulations and specifications of the city, and the city authorities refused to accept the work until the cracks were filled with asphalt. The claimant demanded of the bankrupt that he perform this work, but he failed to do so, and another contractor was employed to perform the necessary work at a cost of $4,500, for which claimant now makes claim against the bankrupt estate. If the claim presented for approval was entirely separate and distinct from anything involved in the action, settlement, and release, there might be some basis for the contention that the general language of the release releasing the bankrupt from all claims or indebtedness or liability to the syndicate would not cover such a separate and independent claim accruing to the syndicate after the settlement, but the claim cannot be so separated. The suit brought against bankrupt was not only to recover from him the overpayment made by him, but for deficiencies in the performance of the contract which had been corruptly agreed to by the agent of the syndicate. As to these items the claim was distinctly based upon a breach of the agreement for the performance of the work. It might well be argued that, in view of the principle that demands for the breach of a contract cannot be split, a judgment in that case, whether on the merits or by dismissal under an agreement of settlement, would alone be sufficient to preclude any further action to recover future damages arising from a breach of contract occurring before the settlement. See Bienville Water Supply Co. v. Mobile, 186 U. S. 212, 217, 22 S. Ct. 820, 46 L. Ed. 1132; Baird v. United States, 96 U. S. 430, 432, 24 L. Ed. 703, where it is said:

"But there is another objection to the recovery which is equally good. It is well settled that, where a party brings an action for a part only of an entire indivisible demand, and recovers judgment, he cannot subsequently maintain an action for another part of the same demand. Warren v. Comings, 6 Cush. (Mass.) 103. Thus, if there are several sums due under one contract, and a suit is brought for a part only, a judgment in that suit will be a bar to another action for the recovery of the residue."

We base our decision, however, on the language of the release interpreted in the light of the circumstances under which it was executed, and the principles above stated.

In view of this fact, it is apparently immaterial whether parties to the action had in mind the deficiencies in performance which either led to, or resulted from, the cracks in question. We conclude that under the circumstances any claim for a breach of the street improvement contract, whether fully known to the parties at the time of the settlement or made known by reason of subsequent deterioration or defect in the work, was covered by the terms of the release, and that the claim should have been disallowed for that reason.

Order is reversed.